| TOBIAS, Judge.
Defendant, Darrin S. Robinson (“Robinson”), appeals his re-sentencing as a habitual offender. We affirm.
In 1991, Robinson was convicted of aggravated burglary and attempted simple burglary of an inhabited dwelling;[1] he was originally sentenced to a twenty-five year term on the first offense and then re-sentenced as a second offender under La. R.S. 15:529.1, the Habitual Offender Law, to serve fifty years at hard labor. His convictions and sentences were affirmed in an unpublished opinion by this court. State v. Robinson, 94-0434 (La.App 4 Cir. 10/27/94), 644 So.2d 1166, writ denied, 94-2882 (La.6/23/95), 656 So.2d 1009.
*248 Robinson filed a pro se motion to correct an illegal sentence in the Nineteenth Judicial District Court for the Parish of East Baton Rouge (“19th JDC”), and on 8 September 2000, the 19th JDC granted the motion and ordered that appellant’s record be amended to show that he was serving a twenty-five year term with good time eligibility.
The State filed a motion to correct an illegal sentence on 26 October 2000 in | gCriminal District Court for the Parish of Orleans. On 30 October 2000, the judge who presided over the appellant’s original trial and sentencing, granted the State’s motion, vacated the earlier sentence of twenty-five years at hard labor, and imposed a new sentence of fifty years at hard labor with credit for time served. A motion to reconsider the sentence was made and denied by the trial court.
The facts of the case as taken from Robinson’s original appeal are as follows:
On the afternoon of June 19, 1990 Ms. Mary Cox was at her home at 109 Lá-veme Street in Algiers. The house comprised one-half of a shotgun double; Ms. Cox’s granddaughter lived on the other side. She was watching television when a man at her door asked if she knew someone by the name of Denise. Ms. Cox replied that she did not, and the man left. Approximately twenty minutes later, the first man returned, accompanied by another man, and asked Ms. Cox for a drink of cold water. After she had gone to get some, the men pushed their way into the house and threatened to kill her if she screamed. One of the men, identified at trial as the defendant, went through the door into the granddaughter’s side of the double and ransacked it. The other man continued to hold Ms. Cox down and tried to take her rings. Finally, the defendant returned to Ms. Cox’s side of the house, and the men pulled her wedding ring off, which was very tight. Ms. Cox also gave the burglars cash from her drawer and purse after which the men left. Ms. Cox immediately phoned the police.
The first officer to respond was Andrew Washington. He testified that he called the Crime Lab to the scene because Ms. Cox indicated that the burglars had handled a container in her granddaughter’s bedroom. Officer Washington also testified that to him the house appeared to be one house with two addresses.
Officer Chana Pichón of the N.O.P.D. Crime Lab went to the scene of the burglary. She testified that she was able to lift prints at the house from a check box which was on top of a bed and from a camera film container in the same room. Officer Kenneth Solis, a fingerprint expert, testified that the fingerprints positively matched those of the defendant.
Caroline Benoit, Ms. Cox’s granddaughter, testified that she was residing at 111 Laverne Street on the day of lathe burglary. When she arrived home, she saw that her closet door was open and that a box of checks, normally on the shelf, was on the bed with the cover off. Also, a box with film in it had been taken from her dresser and was on the bed. Her VCR had been moved around. Ms. Benoit testified that she had not left her home in that condition and that she had not given anyone permission to enter her home. Ms. Benoit testified on cross-examination that the door between her rooms and her grandmother’s was generally left open and had been open that morning when she left for work.
A neighbor of the victims, Ms. Betty DiGiovanni, testified that on June 19, 1990 she saw two black men walking out *249 of Mrs. Cox’s house, down her porch, and getting into a car.
State v. Robinson, 94-0434, pp. 1-2 (La.App. 4 Cir. 10/27/94), 644 So.2d 1166.
Through counsel, Robinson assigns three errors: (1) the trial court erred in denying the appellant counsel of his choice; (2) the trial court should not have acted on the State’s motion to correct an illegal sentence; and (3) the sentence is excessive. In a pro se brief, Robinson argues: (1) the sentence imposed after remand was vindictive prosecution in violation of due process; (2) the trial court lacked authority to re-sentence him; and (3) the sentence is excessive.
Counsel’s Assignment of Error No. 1
Robinson argues that the trial court erred in denying him the counsel of his choice.
In State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, this court set out the law on this issue:
The Sixth Amendment to the United States Constitution guarantees that the accused in all criminal prosecutions shall have the assistance of counsel for his defense. Our state Constitution further provides that at each stage of a criminal proceeding, “every person is entitled to assistance of counsel of his choice.” La. Const. art. I, § 13. The right to the assistance of counsel is so fundamental to the constitutional guarantee of a fair trial that its denial cannot be considered harmless error. Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). However, “the right to choose one’s attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.” State v. Leggett, 363 So.2d 434, 436 (La.1978). Thus, the Louisiana Supreme Court has repeatedly upheld the trial court’s denial of motions made on the day of trial based upon the defendant’s dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La.1983) and cases cited therein.
Id., p. 8, 744 So.2d at 187-8.
At the re-sentencing hearing on 30 October 2000, Bruce Whittaker, the court-assigned attorney, informed the judge that the defendant claimed to have been in contact with another attorney, Gary Wainwright, who had motions to file in the matter. The prosecutor said he had no objection to resetting the case, but pointed out that it must be heard in the very immediate future because the defendant was “due to roll out” soon. The court delayed the hearing in order to find Mr. Wainwright. Some time later that day, the court told the defendant that Mr. Wainwright could not be found, and furthermore, Mr. Wainwright never indicated to the court that he was acting as Robinson’s lawyer. The court noted that-what was to occur at the hearing was simply an “administerial function” and that if Mr. Wainwright was going to represent Robinson, Mr. Wainwright could come in later and file a motion to reconsider the sentence on Robinson’s behalf. The court then stated that in 1991 it had erred in failing to vacate the original twenty-five year sentence prior to imposing the multiple offender term. The court vacated the earlier sentence and sentenced Robinson to serve fifty years at hard labor as a second offender under La. R.S. 15:529.1. The defendant received credit |sfor the time already served.
No evidence in the record indicates that Mr. Wainwright had been retained to represent Robinson. (Robinson was represented by OIDP at trial, on appeal, and at his re-sentencing). Furthermore, no evidence is present that the result of the *250 sentencing hearing would have been different if Mr. Wainwright had been Robinson’s defense counsel. The trial court noted that “resentencing” was merely “adminis-terial,” meaning ministerial, process. No showing is made by the appellant that he was prejudiced in any way by having Mr. Whittaker represent him at the hearing or that Mr. Whittaker was inept or incompetent. The appellant’s position that he expected retained counsel (which was first made known to the court on the day of the sentencing hearing and for which the appellant offered no evidence) was an unreasonable expectation, and the trial court did not err in proceeding with appointed counsel.
The assignment is without merit.
Counsel’s Assignment of Error No. 2 and Appellant’s Pro Se Assignments of Error Nos. 1 and 2
Robinson maintains that the trial court should not have acted upon the State’s motion to correct the sentence be-causé the sentence as imposed by the 19th JDC was legal and the venue proper. Robinson in his second pro se assignment contends that the trial court in Orleans Parish lacked jurisdiction to re-sentence him on 30 October 2000. As part of the discussion, counsel suggests that vindictiveness played a part in the appellant’s re-sentencing, and that point is Robinson’s second pro se argument.
The appellant argues that the trial court in Orleans Parish lacked jurisdiction |fito vacate a sentence that had already been vacated by the 19th JDC. He maintains that when the 19th JDC vacated his habitual offender sentence and re-imposed the twenty-five year sentence, his case was closed.
As to the question of venue, La. R.S. 15:571.15, the statute governing venue for actions contesting computation of sentence, discharge, parole, and good time dates, mandates that all such actions shall be brought in the parish of East Baton Rouge. Thus, the 19th JDC has jurisdiction over questions concerning the computation of discharge times for prisoners. However, the 19th JDC has no jurisdiction to review or modify a sentence imposed by another district court. Thus, the 19th JDC’s decision to reinstate the twenty-five year sentence originally imposed by the Orleans Parish Criminal District Court is a nullity and without force and effect. Further, Robinson offers no evidence that the 19th JDC vacated his habitual offender sentence. The record contains a judgment stating that the 19th JDC considered de novo the entire record in this case and concluded that Robinson was serving a twenty-five year sentence because he “was not properly sentenced as a multiple offender.” No transcript of the hearing is in the record on appeal. No reasons are given for the 19th JDC’s action. The appellant argued in his original appeal and in several pro se writs that when he was originally sentenced in 1991 the trial court in Orleans Parish did not vacate his twenty-five year term before imposing the habitual offender sentence of fifty years. In his original appeal, when he complained as an assignment of error that the sentencing transcript does not so indicate, this court stated that
the commitment order signed by the judge affirmatively vacates the sentence imposed previously on the defendant. The appellant has cited no authority which would suggest that the commitment order signed by the trial judge is insufficient. [Emphasis in original.]
State v. Robinson, supra at p. 10.
Louisiana Courts of Appeal have not agreed on this issue. The First Circuit has remanded cases so that original sentences could be vacated prior to multiple bill sentences being imposed. Hudson v. *251 Day, 96-2428 (La.App. 1 Cir. 11/7/97), 703 So.2d 702. (The 19th JDC, as part of the First Circuit, followed that position in this case.) In Hudson, an inmate of the Department of Public Safety and Corrections (“DOC”) claimed that the DOC failed to recognize his eligibility for good time. As in the case at bar; the commitment order showed that the original sentence had been vacated, but the transcript of the multiple bill sentencing did not. The First Circuit held that the original sentence remained in effect.
The Louisiana Supreme Court addressed the issue in State v. Mayer, 99-3124 (La.3/31/00), 760 So.2d 309, reversing the Fifth Circuit when it took similar action. The minute entry and commitment form reflected that the trial court vacated the original sentence, but the transcript did not so reflect. The Fifth Circuit vacated the multiple offender sentence and remanded the case for re-sentencing. The Supreme Court granted writs on that sole issue, and vacated the Fifth Circuit’s order, reinstating the defendant’s multiple offender sentence as imposed by the trial court. The Court in a per curiam opinion stated:
To the extent that the October 30, 1998 commitment/ minute entry reflects that the trial judge vacated the defendant’s original sentence and thereby eliminated any possible confusion as to the terms of the defendant’s confinement, the failure of the transcript of the multiple offender hearing to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant. La. C.Cr.P. art. 921; see State ex rel. Haisch v. State, 575 So.2d 816 (La.1991) (“The trial court is ordered to vacate the twenty-one year sentence it first imposed coincidentally 1 Rwith its imposition of the enhanced sentence. See La.R.S. 15:529.1(D).”).
Mayer, 760 So.2d at 310.
The minute entry and commitment form in the case at bar indicate that the trial court vacated the original sentence. The 19th JDC’s action occurred on 8 September 2000. The Supreme Court’s decision in Mayer was handed down on 31 March 2000. Thus, the 19th JDC’s action was erroneous on two counts. First, the 19th JDC did not have jurisdiction to reinstate Robinson’s twenty-five year sentence because a sentence can only be modified or corrected in the trial court that entered it; Robinson’s claim before the 19th JDC did not deal with the computation of the sentence, discharge, parole, or good time dates. Secondly, the court did not adhere to the Supreme Court’s decision in Mayer.
The State’s action in bringing a motion to correct an illegal sentence was proper. The 19th JDC had no authority to change the appellant’s sentence, and the record on appeal does not show that the sentence was vacated. Thus, the trial court was not required to vacate a sentence and then re-sentence the appellant to fifty years at hard labor as a second offender. In State v. Norwood, 01-0432 (La.App. 4 Cir. 8/29/01), 802 So.2d 721, this court considered the same circumstances and, following Mayer, reinstated the original multiple offender sentence. Similarly, the fifty-year sentence imposed on 19 November 1991, was in compliance with the law, and, therefore, this court is required to reinstate the sentence imposed on the appellant as a second offender under La. R.S. 15:529.1.
As to the question of vindictiveness, both counsel and the appellant pro se argue that the appellant’s litigiousness led the DOC to notify the district attorney to suggest reopening proceedings against the appellant. In argument, counsel *252 |amaintains that evidence could have been found to prove that the action of the DOC was unusual and, therefore, suspect. However, no such evidence was offered. The appellant pro se argues that 19th JDC acted lawfully, yet the DOC warden had the Orleans Parish district attorney bring an action to override the 19th JDC. As previously noted, the issue of the earlier sentence not being vacated prior to the imposition of the habitual offender sentence was resolved in this court’s 1994 opinion in this matter. Furthermore, the Supreme Court’s decision in Mayer reiterated the holding on the issue. Robinson continues to argue the same issue and concludes that he is the victim of vindictiveness rather than acknowledge that his argument is wrong even though every court has reached the same conclusion except the 19th JDC, which had no jurisdiction to consider the issue.
No merit exists in this assignment.
Counsel’s and Appellant’s Assignment of Error No. 3
In this assignment Robinson maintains that his sentence is excessive. He argues that at the time of the offense he was nineteen years of age with one prior felony offense for illegally carrying a weapon and a misdemeanor arising out of the same offense. He further contends that at the time of the aggravated burglary he was not armed and did not physically harm the victim. Robinson analyzes other aggravated burglary cases in which lesser sentences were imposed.
The sentencing range under La. R.S. 14:60 and La. R.S. 15:529.1(A)(l)(a) is fifteen to sixty years. Robinson was sentenced to fifty years. The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face and do not provide grounds for quashing a multiple bill. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. However, the trial court has the authority to reduce the mandatory [10sentence provided by the statute for a particular offense and offender when such a term would violate the defendant’s constitutional protection against excessive punishment. Id.
In this case Robinson and an accomplice gained entry into the home of a seventy-six year old widow by requesting a drink of water. After she opened the screen door to give it to them, they forced their way into her home that she shared with her granddaughter. They pushed her down into a chair and threatened to Mil her if she did not give them money and her wedding ring. She testified that she was praying for her life. The accomplice held his hand over her mouth so that she could not scream. She handed over what money she had, but she pleaded with them not to take her ring. Nevertheless, they forcibly removed it from her finger even though the ring was quite tight and hard to get off. The argument that she was not harmed is at best outrageous. She was terrorized in her own home after trying to be kind to the defendant.
At 19 November 1991 hearing, the trial court reviewed the facts of the case, including the defendant’s “violently [ripping] ... the ring off [the victim’s] ... finger” as she “begged” him not to do so. The court concluded that it saw “no reason to show him any compassion since he showed none to the victim in this matter.”
In State v. Hawthorne, 454 So.2d 285 (La.App. 4 Cir.1984), this court affirmed a maximum term for a young defendant convicted of aggravated burglary who entered a house where a woman was sleeping with her infant.[2] He covered her mouth and *253 threatened to kill her baby. She screamed; he began to choke her. Then he fled, taking money from her purse. The defendant argued on appeal that the sentence was excessive because he had not harmed the woman and had not intended to hurt lnher. This court, finding nothing mitigating in the self-serving statement, affirmed the sentence.
Similarly, the defendant in the instant case was found by the trial court to be one of the worst kind of offenders. The court found breaking into a stranger’s house and accosting the person in what should be a safe haven “an extremely serious offense.” The court concluded that this was one of the worst crimes and served to ruin life for people in this city.
We find no merit in this argument.
Conclusion
Finding no merit to Robinson’s assignments, the appellant’s fifty-year sentence as a second offender under La. R.S. 15:529.1 imposed on 19 November 1991 is reinstated and reaffirmed.

SENTENCE REINSTATED AND AFFIRMED.

. He was sentenced to serve six years on the attempted simple burglary of an inhabited dwelling conviction; this sentence was originally imposed to run consecutively with the other sentence; however, at the re-sentencing hearing on 30 October 2000, the court stated that the sentence is to run concurrently with the multiple offender term.

. The defendant was not sentenced as a multi-pie offender; he received a thirty-year term.